UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MICHELLE PALMORE**  **CIVIL ACTION**
**on behalf of I.P.**

**VERSUS**  **NO. 14-1257-CJB-SS**

**CAROLYN COLVIN, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**

## REPORT AND RECOMMENDATION

The plaintiff, Michelle Palmore on behalf of her minor child, I.P., seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1382c(a)(3).

## PROCEDURAL HISTORY

On January 31, 2012, Michelle Palmore ("Ms. Palmore"), submitted an application for SSI benefits on behalf of her minor son, I.P., who was born in 2005. He did not have private, group or government health insurance. R. 94-95. The onset date was January 1, 2009, with the disabling conditions were attention deficit hyperactivity disorder ("ADHD"), speech and language delays, soils himself, and dyslexia. R. 111. On May 11, 2012, the application was denied. R. 55-58.

On March 13, 2013, there was a hearing before an Administrative Law Judge ("ALJ"). Ms. Palmore and her son were present. R. 30-31. She proceeded without representation. R. 34-36 and 90. On March 27, 2013, the ALJ issued an unfavorable decision. R. 10-29. She

requested review of the decision. R. 6-7. On August 6, 2013, counsel appeared for them. R. 5. On March 27, 2014, the Appeals Council denied the request for review. R. 1-4.

On May 30, 2014, Ms. Palmore filed a complaint for review of the Commissioner's decision. Rec. doc. 1. The Commissioner filed an answer and the administrative record. Rec. docs. 13 and 14. The parties filed cross-motions for summary judgment. Rec. docs. 15 and 17.

## STATEMENT OF ISSUES ON APPEAL

Issue No. 1.    Did the ALJ give appropriate weight to the opinion of the treating physicians?

Issue No. 2.    Was there substantial evidence supporting the ALJ's decision?

## THE COMMISSIONER'S FINDINGS

The ALJ made the following findings:

1. I.P. was born in 2005. He was a school-age child on January 27, 2012, the date the application was filed, and was a school-age child at the time of the decision (20 C.F.R. § 416.926a(g)(2)).

2. I.P. had not engaged in substantial gainful activity since January 27, 2012, the application date (20 C.F.R. §§ 416.924(b) and 416.971 et seq.).

3. I.P. had the following severe impairments: ADHD and speech and language delays (20 C.F.R. § 416.924(c); Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985)).

4. I.P. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.924, 416.925 and 416.926).

5. I.P. did not have an impairment or combination of impairments that functionally equaled the severity of the listings (20 C.F.R. §§ 416.924(d) and 416.926a).

6. I.P. had not been disabled, as defined in the Act, since January 27, 2012, the date the application was filed (20 C.F.R. § 416.924(a)).

## ANALYSIS

a. **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's. Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990); Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any

findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

The issue is whether the claimant is "disabled" under the definition found in 42 U.S.C. § 1382c(a)(3)(C) which states:

> An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Id. The regulations thereunder mandate the following three step analysis:

> We follow a set order to determine whether you are disabled. [Step One] If you are doing substantial gainful activity, we will determine that you are not disabled and not review your claim further. [Step Two] If you are not doing substantial gainful activity, we will consider your physical or mental impairment(s) first to see if you have an impairment or combination of impairments that is severe. If your impairment(s) is not severe, we will determine that you are not disabled and not review your claim further. [Step Three] If your impairment(s) is severe, we will review your claim further to see if you have an impairment(s) that meets, medically equals, or functionally equals in severity any impairment that is listed in appendix 1 of subpart P of part 404 of this chapter. If you have such an impairment(s), and it meets the duration requirement, we will find that you are disabled. If you do not have such an impairment(s), or if it does not meet the duration requirement, we will find that you are not disabled.

20 C.F.R. § 416.924(a). If a claimant's impairment does not meet or medically equal in severity a listed impairment, the Commissioner considers how the child functions in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). There will be a finding of functional equivalence if there are marked limitations in two of the domains, or an extreme limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked" limitation in a domain is when an impairment interferes seriously with the child's ability to independently initiate, sustain, or

complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme" limitation interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

b.  **Testimony at Hearing.**

Ms. Palmore stated that I.P. had been diagnosed with ADHD and delayed articulation. R. 39-40 and 47.  I.P. was very "hyper;" he took Focalin; he had been to Children's Hospital because of his stool problems; and he was returning to a Children's Hospital doctor. R. 39-40.

Ms. Palmore believed that I.P. was disabled because: (1) he was very hyper; (2) when she told him to do something, he did not understand; (3) she had to repeat instructions to him; (4) when he was small, he delayed walking; and (5) he delayed speaking. R. 47. She constantly had to tell him to pick up things. It was as though he did not understand what she said. R. 50.

I.P. was able to dress and groom himself. R. 49. He was able to sit down, but he still moved. He was very physical. R. 49. He was able to stand up. R. 49. He was able to walk. R. 50. He could lift and carry items. R. 50. He was not in any pain. R. 50. He liked to watch TV. R. 50. At the time of the hearing, I.P. was seven. R. 41. He was born in Baton Rouge at Women's Hospital. R. 41. He weighed 55 to 60 pounds. R. 41. He was left-handed. R. 42.

Ms. Palmore was single with no other children. R. 42. She and I.P. lived in an apartment. R. 42. She received food stamps and disability benefits for depression and anxiety. R. 42. She did not receive any other income. R. 42-43. She thought she was on Medicaid. R. 43.

I.P. was in first grade in regular classes. R. 43. He was taking reading, math, spelling, and English. R. 44. He had a "C" in math and reading. R. 44-45. He was not doing well in spelling. R. 45. He needed help to read. R. 45. He did not use correct grammar. R. 45. His

grade in English was maybe a "B". R. 45. He did not receive a grade for PE. R. 45-46. He did his classwork and homework. R. 45-46.

I.P. appeared to be doing well in school. He was doing much better than the year before. R. 51. Ms. Palmore had a great relationship with him. R. 46. He was well-loved in the family. R. 46. He played with his friends outside. R. 50. He functioned well at the apartment with Ms. Palmore. R. 51. He related well to other people, including people at school and his family. R. 51. He also was withdrawn a lot. R. 51. Ms. Palmore reported that I.P.'s next doctor appointment was in April. R. 53. She did not want the ALJ to wait on a decision until after that appointment. R. 53.

c. **Medical Evidence**.

### 2007-2010

On January 3, 2007, Cac Thanh Le, M.D., referred I.P. for evaluation. The diagnosis was developmental delay. R. 140-41.

On April 9, 2009, I.P. was seen with Ms. Palmore by Dr. Le for diarrhea. R. 146. On April 27, 2009, they returned to Dr. Le because of a rash on I.P.'s face, stomach and legs. R. 145. On September 28, 2009, they were seen by Dr. Le for I.P.'s fever, vomiting, diarrhea, and runny nose. R. 144. On October 21, 2009, they returned to Dr. Le for a check-up and vaccinations. I.P. had a runny nose. R. 143. On October 21, 2009, a Denver Prescreening Developmental Questionnaire was completed. R. 150.

### 2011

On February 10, 2011, I.P. was seen at Kid West. Ms. Palmore reported that he was very hyper. R. 195 and 197.

On April 13, 2011, Ms. Palmore's request for services from the Jefferson Parish Human Services Authority ("HSA") was confirmed.  R. 152-53.  On July 19, 2011, there was a psychological evaluation by Christine B. Powanda, Ph.D., on a referral from HSA.  R. 156-60. On July 25, 2011, HSA reported that I.P. did not have a developmental disability as defined in the Development Disabilities Law (La. R.S. 28:451 et seq.).  R. 215.  HSA accepted Dr. Powanda's recommendations that I.P. be referred for psychiatric treatment and counseled for his ADHD symptoms and that Ms. Palmore be referred for parenting effectiveness and behavior support services of his ADHD.  R. 217.

On August 24, 2011, I.P. was seen for an appointment with HSA for family counseling/therapy.  He was to return in two weeks.  R. 187 and 280.  On August 26, 2011, Bryon Hammer, M.D., a psychiatrist, completed a treatment plan for I.P. with the objective of reducing the frequency and intensity of his ADHD symptoms by attending monthly medication management appointments.  R. 276-79.  On August 26, 2011, Ms. Palmore was notified that Westside Clinics (Pediatricians) was unable to reach her to schedule an appointment for a Kidmed assessment for I.P.  R. 184.

Ms. Palmore canceled an HSA appointment for family counseling/therapy that was set for September 13, 2011.  R. 280.  On September 19, 2011, I.P. and Ms. Palmore failed to appear for an appointment with Champa Chakraborti, M.D., a psychiatrist, for a diagnosis interview examination.  R. 190 and 280.

On September 28, 2011, I.P. was seen at the Kid West clinic.  Ms. Palmore reported that he had stool and bladder problems.  I.P. did not comprehend instructions.  R. 196.  Ms. Palmore and I.P. failed to show for an HSA appointment for family counseling/therapy set for September 28, 2011.  R. 281.  Another appointment was missed on October 11, 2011.  R. 281.

On October 25, 2011, a psychosocial evaluation for HSA was completed with I.P. and Mrs. Palmore by Edwin Strickling, a graduate social worker.  R. 278 and 281.

On November 11, 2011, Dr. Chakraborti completed a psychiatric evaluation.  R. 256-275.  The clinical presentation was consistent with ADHD (combined), encopresis and mild mental retardation.  R. 271.

On November 16, 2011, I.P. was seen by HSA for family counseling/therapy.  R. 281.  HSA wanted I.P. to have an EKG and lab work.  On November 25, 2011, I.P. was seen by Kid West on the referral.  R. 194.  There was lab work.  R. 198-200.  On November 28, 2011, Ms. Palmore signed a consent form for treatment.  R. 186.

On November 29, 2011, Dr. Chakraborti completed a diagnostic review form.  The diagnoses were ADHD and encopresis without constipation.  There was mild mental retardation.  There was no diagnosis for his medical condition.  R. 201 and 253-55.  The EKG was normal.  R. 282.  Lab results were not received.  R. 282.

I.P.'s next appointment with Dr. Chakraborti was set for December 14, 2011.  R. 203.  Ms. Palmore canceled the appointment because of transportation problems.  R. 282.

**2012**

On January 3, 2012, I.P. and Ms. Palmore were present with HSA for family counseling/therapy.  R. 282.  On January 12, 2012, I.P. and Ms. Palmore failed to appear for a January 12, 2012 appointment with Katherine Aucoin, Ph.D., for psychological testing.  R. 189.  On January 19, 2012, they failed to appear for an HSA appointment.  R. 188 and 283.

I.P.'s next appointment with Dr. Chakraborti was set for February 2, 2012.  R. 202.  I.P. and Ms. Palmore had an appointment on February 9, 2012 with Dr. Aucoin at the West Bank

8

Child Services.  R. 190.  I.P. was given a prescription for Focalin.  R. 191.  An achievement test was completed.  R. 283.

At the request of the Commissioner, Dr. Powanda completed a second psychological evaluation of I.P. on April 23, 2012.  R. 285-88.  On May 8, 2012, Charlotte Ducote, Ph.D., a non-examining psychologist, completed a report based on her review of the records.  R. 289-91.  On May 11, 2012, Henry Simon, M.D., a non-examining pediatrician, completed a report based on his review of the records.  He found no significant problems.  R. 292-94.

On February 2, 2013, I.P. was seen at Children's Hospital for constipation.  I.P. did not report pain.  MirLAX was prescribed.  He was to schedule an appointment with Dr. Rosenberg.  R. 295-97.

d.      **School Records**

On December 18, 2009, Jefferson Parish Public School System ("JPPSS") completed an Individualized Education Plan ("IEP") report.  R. 162-73 and 238-49.  Ms. Palmore was notified that if she wanted an oral explanation of the evaluation she was to contact the social worker.  R. 163.  At the time of the referral, I.P. was less than four years old.  R. 164.  Ms. Palmore was concerned with his communication skills.  R. 164.  I.P. presented with a mild to moderate articulation delay characterized by non-developmental phoneme errors in his speech.  R. 169.  His language skills improved after his recent enrollment in a daycare setting.  R. 169.  It was recommended that I.P. improve his articulation skills through specialized services designed by a speech pathologist.  R. 170.  It also was recommended that his communication skills be improved in the home setting.  R. 170-71.  Ms. Palmore did not participate in the eligibility determination despite written invitation and attempts to arrange a meeting by telephone/or other methods.  R. 173.

On December 22, 2009, Ms. Palmore was notified that JPPSS assigned I.P. to Johnson elementary school for speech-hearing-language services. R. 161. On December 8, 2010, JPPSS reported an initial evaluation was acceptable. R. 236-37.

On January 27, 2011, there was a school report. R. 175-181. I.P. was attending Estelle elementary school. There was a reference to the individual evaluation of December 18, 2009. I.P. was in kindergarten. He was seeking articulation therapy on a weekly basis. His strengths were visual motor readiness skills and cooperation. Ms. Palmore expressed concerns about his comprehension skills, hyperactivity and stuttering. I.P. met the criteria for mild to moderate articulation delay. I.P.'s classroom teacher reported that he was performing below level in the general curriculum. He was in a reading intervention lab on weekly basis. His strengths in the classroom were attitude, motivation, work habits and effort. R. 175. The educational need was communication. R. 176. I.P.'s regular classes were reading, science, math, spelling, writing, English/language arts, PE and social studies. R. 179. Ms. Palmore signed the report. R. 181.

On March 11, 2011, there was an IEP assessment. I.P.'s kindergarten report card for 2010/2011 for the first term had "Cs" for language arts, mathematics, speaking, listening and conduct. He had an "A" in music. He was progressing in writing, art, science, drama and social studies. He received satisfactory in conduct, health and P.E. R. 185 and 214. For the second term, the grades were the same except he had "As" in art and conduct. R. 210. For the third term, the grades were similar to the second term except he had "As" in drama and music. R. 210. For the fourth terms, I.P. was progressing in language arts, speaking and listening. He had "Cs" in math and writing. He had "As" in art, conduct, drama and music. He was progressing in science and social studies. He had an "A" in conduct in P.E. and was satisfactory in health and P.E. R. 211.

On October 21, 2011, the IEP Progress Report reflected that I.P. was doing an excellent job in therapy. The report stated that I.P. may be ready soon for dismissal from therapy. R. 206-07. For the first term in first grade (2011-2012), he had a "C" in homeroom, "Fs" in reading, English and math, and "Ss" in health, P.E., science and social studies. R. 212.

On December 21, 2011, the IEP Progress Report reflected that I.P. was making excellent progress on his articulation goals. R. 206.

A teacher checklist was completed for a January 18, 2012 IEP meeting at Estelle elementary school. I.P. did not require assistive technology. The current strategies were adequate. R. 231-235. The IEP was completed. R. 223-229. He attended regular first grade classes at Estelle elementary. For the preceding year, he received speech therapy each week. I.P. presented with mild to moderate articulation delay. He was performing below level in the first grade class. R. 223. He needed help with communication. R. 224. He attended regular classes and participated in activities with non-disabled peers. R. 226. He corrected all of the sounds identified in his previous evaluation. He targeted those sounds in conversation. He self-corrected errors as they occurred in conversation. R. 227.

e.  **Plaintiff's Appeal.**

**Issue No. 1**.  Did the ALJ give appropriate weight to the opinion of the treating physicians?

The plaintiff refers to Edwin Strickling, Cac Than Le and Champa Chakraborti as treating physicians, whose opinions were not given appropriate weight by the ALJ. Rec. doc. 15 (Memorandum at 4). Edwin Strickling is a graduate social worker. R. 278. Ms. Palmore incorrectly described him as a physician. She argues that the ALJ did not provide good cause for failing to give controlling weight to the opinions of Drs. Le and Chakraborti.

I.P. was seen by Dr. Le in 2007 and at least five times in 2009.  R. 141.  R. 140-50.  The immunization record indicates I.P. began seeing Dr. Le in 2006 or less than a year after his birth.  R. 151.  Dr. Chakraborti is a psychiatrist.  R. 280.  He completed a psychiatric evaluation on November 20, 2011.  R. 256-275.  A diagnostic review form was completed by him on November 29, 2011.  R. 201 and 253-55.

The ALJ stated that weight was given to the collective opinions of Christine Powanda, Ph.D., and Charlotte Ducote, Ph.D., as well as Henry Simon, M.D.  The ALJ described their opinions as having diagnostic and clinical support in the records.  I.P. underwent psychological assessments with Dr. Powanda on July 19, 2011 and April 23, 2012.  R. 156-160 and 285-288.  I.P.s records were reviewed by Dr. Ducote, a non-examining psychologist, and Dr. Simon, a non-examining pediatrician.  R. 289-294.  The ALJ also cited the intellectual functioning test scores for I.P. and the speech pathologist's findings in the December 18, 2009 IEP assessment.  R. 20.

In <u>Scott v. Heckler</u>, 770 F.2d 482, 485 (5th Cir. 1985), the ALJ rejected the treating physician's opinion that the claimant was totally disabled.  In reversing and remanding the Fifth Circuit said,

> This court has repeatedly held that ordinarily the opinions, diagnoses and medical evidence of a treating physician who is familiar with the claimant's injuries, treatment, and responses should be accorded considerable weight in determining disability.  There are exceptions to this principle. The ALJ may give less weight to a treating physician's opinion when "there is good cause shown to the contrary," as is the case when his statement as to disability is "so brief and conclusory that it lacks strong persuasive weight," is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence. The ALJ may also reject a treating physician's opinion if he finds, with support in the record, that the physician is not credible and is "leaning over backwards to support the application for disability benefits." The administrative fact finder is entitled to determine the credibility of medical experts as well as lay witnesses and to weigh their opinions and testimony accordingly.

770 F.2d at 485. "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." Muse v. Sullivan, 925 F.2d 785, 790 (5th Cir. 1991).

The opinions that Ms. Palmore contends the ALJ ignored are: (1) Dr. Le's January 3, 2007 diagnosis of developmental delay when I.P. was 15 months old (R. 140-141); (2) a February 10, 2011 visit to Kid West, where the diagnosis was ADHD and Ms. Palmore reported that I.P. was very hyper in school (R. 195); (3) a September 28, 2011 visit to Kid West, where Ms. Palmore reported urine and bowel movement accidents and I.P.'s inability to comprehend instructions (R. 196); (4) a September 28, 2011 reference to starting I.P. on medication and diagnosing dyslexia (R. 196); and (5) a November 11, 2011 psychiatric evaluation, where Dr. Chakraborti summarized I.P.'s condition on clinical presentation as consistent with ADHD (combined), encopresis (stool holding or soiling) and mild mental retardation (R. 271). Rec. doc. 15 (Memorandum at 4).

The issue is not whether I.P. was diagnosed with ADHD. The ALJ found that I.P.'s ADHD was a severe impairment. R. 16. The ALJ did not find that I.P.'s ADHD met or medically equaled the severity of a listing or functionally equaled the listing. R. 16. The ALJ assessed I.P.'s functioning in terms of six domains and found that he possessed a marked limitation in only the attending and completing tasks domain. R. 21-22. The reports by Drs. Le and Chakraborti cited by Ms. Palmore do not assess I.P.'s functioning in terms of the six domains.

The most complete of these reports was Dr. Chakraborti's November 11, 2011 psychiatric evaluation. Under the heading of "attention and hyperactivity," the symptoms at home are listed as fidgets, difficulty concentrating, interrupts people, excessive energy and

difficulty remembering due to poor attention.  R. 260.  The note adds that, "mother states clt is hyperactive/displays excessive energy. . . ."  Id.  For school, the note states, "mom says teachers have not mentioned hyperactivity but agree clt has lack of conc/attn span and is falling behind in school due to this".  Id.  While Dr. Chakraborti reported that I.P. met all criteria for inattention under ADHD, he did not meet fully the criteria for hyperactivity because information on his behavior at school was missing.  R. 272.

Dr. Chakraborti relied on Ms. Palmore's report of the symptoms.  He did not have I.P.'s school records.  The ALJ determined that her statements concerning the intensity, persistence and limiting effects of I.P.'s symptoms were not entirely credible.  R. 19.

When I.P. was seen by Dr. Powanda for psychological evaluation in July 2011, I.P. was five and half years old.  He had been promoted to the first grade.  Ms. Palmore reported that I.P.'s kindergarten teacher told her that I.P. had difficulty focusing.  R. 156.  Dr. Powanda administered tests.  She recommended that I.P. be referred for psychiatric treatment and counseling for ADHD symptoms and that Ms. Palmore be referred for parenting effectiveness and behavior support.  R. 160.  Dr. Powanda's second evaluation was nine months later on April 23, 2012.  R. 285-88.  In determining to give weight to the opinions of Dr. Powanda and the State agency psychologist and pediatrician, the ALJ cited the support for Dr. Powanda's opinions in the tests administered by her and the results of the speech pathologist's findings in the IEP assessment of December 18, 2009.  The IEP report recommended specialized services designed by a speech pathologist.  R. 246.  It noted that his language skills improved after he enrolled in a daycare setting.  R. 245

The testing performed by Dr. Powanda and the IEP assessments when considered with Dr. Chakraborti's reliance on Ms. Palmore's credibility for reports of I.E. symptoms at home and

14

school, provided substantial evidence for the ALJ to determine that the opinions of Drs. Powanda, Ducote and Simon should be given greater weight than the opinions of Drs. Lee and Chakraborti. For the same reasons there was good cause for the ALJ to reject the opinions of Drs. Lee and Chakraborti as they lacked the support in the record which was present for the opinions of Drs. Powanda, Ducote and Simon.

**Issue No. 2**.   Was there substantial evidence for the ALJ's decision?

The ALJ found that I.P. had severe impairments:  ADHD and speech and language delays. R. 16. The ALJ found that they did not meet or medically equal the severity of the listed impairments. R. 16. The issue is whether there is substantial evidence to support the ALJ's finding that I.P. did not have an impairment or combination of impairments that functionally equaled the severity of the listings. The ALJ engaged in the three step analysis. At step three, the ALJ assessed I.P.'s functioning in terms of the six domains. R. 14. Although the ALJ made findings at step three concerning each of the six domains, Ms. Palmore does not challenge any one of them except the general statement that the ALJ's opinion was not supported by substantial evidence. She does not explain how I.P. meets, medically equals, or functionally equals a Listing.

Ms. Palmore cites the following medical evidence:  (1) Dr. Le's January 2007 diagnosis of developmental delay (R. 140-41); (2) Focalin prescribed since that diagnosis (R. 191); (3) a September 28, 2011 Kid West clinic note with concerns about comprehending directions, dyslexia and ADHD (R. 196); (4) her difficulty in making appointments because of transportation; and (5) Dr. Powanda's note in the report of I.P.'s April 23, 2012 psychological evaluation that he was significantly restless and evidenced some difficulties with sustained

attention to tasks (R. 288).  Ms. Palmore also cites school records, including reports of his grades and those concerning communication problems.  Rec. doc. 15 (Memorandum at 7-8).

The ALJ determined that I.P. had no limitation in two of the domains:  moving about and manipulating objects (R. 23-24); and health and physical well-being (R. 25).  There is no evidence that I.P. possessed any problem moving about and manipulating objects.  For example, the last IEP report (teacher questionnaire), dated January 18, 2012, did not identify motor aspects of writing, mobility or position and seating as areas that were keeping I.P. from accomplishing IEP goals.  R. 232.  Health and physical well-being addresses recurrent illness, the side effects of medication and the need for ongoing treatment.  R. 25.  While I.P. took Focalin and MiraLax, Ms. Palmore did not describe any side effects.  She reported that I.P.s stool problem was improving.  R. 39-40 and 48.  Other than the mild to moderate articulation delay, the IEP reports did not identify a problem with I.P.'s health and physical well-being.

In support of his finding that I.P. had less than marked limitation in acquiring and using information, the ALJ noted that he was in the first grade and was not required to repeat a grade.  The IEP reports noted progress.  R. 20-21.  For example, the March 11, 2011 IEP reflected that he had "Cs" or was progressing in language arts and speaking (R. 210-11) and the October 21, 2011 IEP reflected that he was doing an excellent job in therapy (R. 206-07).

Ms. Palmore testified that I.P. had a great relationship with her, his family and at school.  R. 46.  He played with his friends.  R. 50.  The ALJ noted that school records did not indicate behavioral issues.  R. 23.  There is substantial evidence for the ALJ's finding that I.P. had a less than marked limitation in interacting and relating with others.  R. 23.

The ALJ found that I.P. had a less than marked limitation in the ability to care for himself.  R. 24-25.  The ALJ referred to Ms. Palmore's testimony, but said, "[t]here are no

school reports chronicling claimant's less than optimal control of his bladder and bowel functioning, nor are there any medical opinions as to the etiology of this problem." R. 25. The ALJ also determined that Ms. Palmore's statements concerning the intensity, persistence and limiting effects of I.P.'s symptoms were not entirely credible. R 19.

The ALJ found that I.P. had a marked limitation in attending and completing tasks. R. 21-22. Inasmuch as I.P. did not have a marked limitation in any of the other five domains, a finding of an extreme limitation was required in the remaining domain for a finding of functional equivalence. 20 C.F.R. § 416.926a(d). An extreme limitation interferes very seriously with the child's ability to initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3). I.P. was diagnosed with ADHD, psychiatric treatment with Dr. Chakraborti was required, and Focalin was prescribed. The ADHD symptoms did not prevent him from being enrolled in regular classes. R. 22. There is substantial evidence for the ALJ's determination that I.P.'s limitation in attending and completing tasks was no more than marked.

Inasmuch as there is substantial evidence for the ALJ's decision on each of the six domains, there is substantial evidence for the ALJ's decision that I.P. was not disabled.

## RECOMMENDATION

IT IS RECOMMENDED that: (1) the Commissioner's motion for cross-motion for summary judgment (Rec. doc. 17) be GRANTED; and (2) Palmore's motion for summary judgment (Rec. doc. 15) be DENIED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

    New Orleans, Louisiana, this 20th day of April, 2015.

                                                  **SALLY SHUSHAN**
                                                  **U.S. Magistrate Judge**